STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re Brosseau/Wedgewood | } | Docket No. 260-11-08 Vtec |
| Act 250 PRD Application | } | |
| | } | |

Decision and Order on Motion for Summary Judgment

Appellant-Applicants Lauretta Brosseau and Wedgewood Development Corporation appealed from a decision of the District 4 Environmental Commission (District Commission) denying their application for an Act 250 permit for a proposed Planned Residential Development (PRD) in the Town of Colchester. Appellant-Applicants (Applicants) are represented by Robert C. Roesler, Esq.; the Agency of Agriculture, Food and Markets is represented by Diane E. Zamos, Esq.; and the Town of Colchester is represented by Thomas G. Walsh, Esq. The Land Use Panel of the Natural Resources Board entered an appearance represented by John H. Hasen, Esq., but has not filed memoranda on the present motion. The Agency of Natural Resources has requested informational status only.

Applicants have moved for summary judgment on some of the questions in the Statement of Questions. The following facts are undisputed unless otherwise noted.

In August 2008, Applicants[1] applied for an Act 250 permit for a proposed 29-lot Planned Residential Development on the easterly side of Jasper Mine Road in the Town of Colchester. The project is proposed to consist of 26 single-family house lots and

---

[1] The application was filed by Applicants, together with Daniel and Christie Fitzgerald, who own a 1.75-acre parcel that is part of the project tract, but is not involved in the proposed PRD. The Fitzgeralds have not entered an appearance in this appeal.

1

three common area lots.  The project tract is 36.15 acres in area, of which 34.4 acres are involved in the proposed PRD.  The District Commission determined that the proposed project did not comply with Criterion 9(B) of Act 250, 10 V.S.A. § 6086(a)(9)(B), and denied the application in October 2008.

If primary agricultural soils are located on a proposed project site, Criterion 9(B) requires the applicant to demonstrate either that the proposed project will not reduce the agricultural potential of such soils, or that the proposed project will comply with subcriteria (i)–(iv).  10 V.S.A. § 6086(a)(9)(B).  Primary agricultural soils are defined for the purposes of Act 250 review in 10 V.S.A. § 6001(15) as:

> soil map units with the best combination of physical and chemical characteristics that have a potential for growing food, feed, and forage crops, have sufficient moisture and drainage, plant nutrients or responsiveness to fertilizers, few limitations for cultivation or limitations which may easily be overcome, and an average slope that does not exceed 15 percent. Present uses may be cropland, pasture, regenerating forests, forestland, or other agricultural or silvicultural uses. However, the soils must be of a size and location, relative to adjoining land uses, so that those soils will be capable, following removal of any identified limitations, of supporting or contributing to an economic or commercial agricultural operation. Unless contradicted by the qualifications stated in this subdivision, primary agricultural soils shall include important farmland soils map units with a rating of prime, statewide, or local importance as defined by the Natural Resources Conservation Service (N.R.C.S.) of the United States Department of Agriculture (U.S.D.A.).

In the present appeal, of the 27.4 acres of the project tract having a rating of prime, statewide, or local as defined by the N.R.C.S., the parties do not dispute that at least 15.3 acres of such soils will be impacted by the proposed project.  The Agency identifies an additional 2.8 acres, for a total of 18.1 acres that it argues are primary agricultural soils.  However, material facts are in dispute as to the area of these 18.1

2

acres, if any, that meets the other elements of the definition of primary agricultural soils contained in 10 V.S.A. § 6001(15).

Question 6 of the Statement of Questions

Question 6 of the Statement of Questions asks the Court to determine whether "the soils on the [p]roject [s]ite have few limitations for cultivation or limitations which may be easily overcome." Applicants argue that the existing forest cover on the project site constitutes a limitation to cultivation that cannot be easily overcome, and that the soils therefore do not meet the definition of primary agricultural soils. This argument is based on the cost of removing the trees on the property, which Applicants argue is so high that agricultural use is not feasible.

The Court rejected a similar argument in In re Village Associates Act 250 Land Use Permit, No. 6-1-08 Vtec, slip op. at 6–8 (Vt. Envtl. Ct. Apr. 30, 2009) (Wright, J.).[2] As explained in that decision, additions to the statutory language that specifically include soils in present use as "regenerating forests" or "forestland," together with "the overall structure of the statutory treatment of primary agricultural soils[,] show[] that the cost of overcoming a limitation for cultivation was not intended to be considered in determining whether such a limitation may 'easily' be overcome." Id. at 7.

In the present case, Applicants have not alleged that there are any limitations to cultivation other than the presence of mature trees on the project site. No physical or technical impediments to the removal of trees on the project site have been identified. Because the cost of removing trees alone does not constitute a limitation that cannot be easily overcome, as explained in Village Associates, Applicants' Motion for Summary

---

[2] The decision is available at:
 http://www.vermontjudiciary.org/GTC/Environmental/ENVCRT%20Opinions/08-006.VillageAssoc.dec.pdf.

3

Judgment as to Question 6 is DENIED, and summary judgment is GRANTED to the Agency of Agriculture, Food and Markets on Question 6.

Remaining Issues in Motion for Summary Judgment

Material facts are in dispute as to the rest of the issues raised in Applicants' Motion for Summary Judgment, which is therefore denied except as to Question 6. The disputed material facts include whether the location of the soils is suitable for agriculture, and whether the soils would be capable of supporting or contributing to an economic or commercial agricultural operation at that location. As may be seen in the Village Associates decision, evidence regarding whether soils are capable of supporting or contributing to an economic or commercial agricultural operation requires a showing of more than the mere distance between the location and the nearest farm. The disputed material facts also include whether a 1.8-acre portion and another 1-acre portion of the subject soils are so isolated from the remaining soils rated as prime or statewide that those 2.8 acres should not be considered primary agricultural soils. Material facts are disputed, or at least have not been provided, as to what "wetlands and other features" "segregate" the site's agricultural soils from other soils on the site. Finally, material facts are disputed, or at least have not been provided, as to whether the project is planned to minimize the project soils' reduction in agricultural potential, 10 V.S.A. § 6086(a)(9)(B)(iii); whether suitable mitigation has been proposed, § 6086(a)(9)(B)(iv); and whether "appropriate circumstances" for off-site mitigation exist under § 6093(a)(3)(B).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Applicants' Motion for Summary Judgment is DENIED, and that summary judgment is GRANTED in part to the Agency of Agriculture, Food and Markets as to Question 6.

4

A telephone conference is scheduled for July 8, 2009 (see enclosed notice) to discuss mediation and to discuss scheduling an evidentiary hearing if necessary to resolve the remaining issues.

Done at Berlin, Vermont, this 9th day of June, 2009.

_____
Merideth Wright
Environmental Judge